UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

MARONE ACEE,

                      Debtor.

Chapter 12
Case No. 12-61631 (Main Case)

---

In re:

BOULDER MEADOWS,

                      Debtor.

Chapter 12
Case No. 12-61632

Jointly Administered[1]

---

APPEARANCES:

| | |
|---|---|
| PETER A. ORVILLE, P.C.<br>*Attorneys for Debtors*<br>30 Riverside Drive<br>Binghamton, New York 13905 | PETER A. ORVILLE, ESQ. |
| NEMETI McDERMOTT EPPOLITO & HEDGLON<br>*Attorneys for Oneida Savings Bank*<br>112 Farrier Avenue, Suite 208<br>Oneida, New York 13421 | ANTHONY P. EPPOLITO, ESQ. |
| RIEHLMAN, SHAFER & SHAFER<br>*Attorneys for Access Federal Credit Union*<br>P.O. Box 430<br>Tully, New York 13159-0430 | AMANDA C. SHAW, ESQ. |
| MARK W. SWIMELAR, ESQ.<br>*Standing Chapter 12 Trustee*<br>250 South Clinton Street, Suite 203<br>Syracuse, New York 13202 | MAXSEN D. CHAMPION, ESQ. |

**MEMORANDUM-DECISION AND ORDER**

       Marone Acee ("Acee") and Boulder Meadows, Inc. ("Boulder Meadows") (collectively,

"Debtors") seek reconsideration of the Court's Memorandum-Decision and Order dated

---

[1] By Order dated October 2, 2013, the Court granted Marone Acee and Boulder Meadows, Inc.'s motion for joint administration filed on August 22, 2013, and therein designated Case Number 12-61631 as the main case. (ECF No. 115.)

November 12, 2013 (the "Decision," ECF No. 118), wherein the Court concluded that neither Acee nor Boulder Meadows was entitled to chapter 12 bankruptcy protection because neither of them qualified as a "family farmer" under Title 11 of the United States Code.[2] Debtors filed their motion for reconsideration on November 22, 2013 (the "Motion," ECF No. 121). Oneida Savings Bank ("OSB") and Access Federal Credit Union ("AFCU") filed opposition to the Motion on December 6, 2013 (ECF No. 127), and December 9, 2013 (ECF No. 129), respectively. The Chapter 12 Trustee, Mark W. Swimelar, Esq., filed an affirmation in support of the Motion on December 11, 2013. (ECF No. 130.) On the same day, Debtors filed a supplemental response to OSB and AFCU's opposition. (ECF No. 131.) The Court heard oral argument on the Motion on December 12, 2013, and reserved decision at that time.

## JURISDICTION

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), and (b)(2)(L), and 1334(a).

## DISCUSSION

**A. Procedural Considerations**

Although the Motion was filed by and titled in the name of both Debtors, the challenged findings of fact and conclusions of law relate solely to Acee. Accordingly, from this point forward, the Court limits its discussion to Acee and leaves undisturbed its findings of fact and conclusions of law concerning Boulder Meadows.

As a basis for reconsideration, Acee invokes Bankruptcy Rule 9024, which makes Rule 60 applicable to bankruptcy cases, and § 105.[3] In the first instance, Acee asks the Court to

---

[2] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (2010) (the "Bankruptcy Code").
[3] All "Rule" references are to the Federal Rules of Civil Procedure, and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure.

correct alleged errors of law as well as to make additional findings based on the record created at trial. Alternatively, the Motion asks the Court to reopen the record to permit Acee to offer additional testimony to further establish certain key factors to be weighed in a chapter 12 eligibility analysis.

Based on the timing and substance of the Motion, Acee's request for relief appears to fall more properly within the scope of Rule 59(e), which is made applicable to bankruptcy cases by Bankruptcy Rule 9023.[4] Under Rule 59(e), the court may correct factual errors or manifest errors of law brought to the court's attention by the moving party. Rule 59(a)(2) specifically permits the court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). Accordingly, "[a]n assertion that the court misapplied the law . . . should ordinarily be raised in a timely Rule 59(e) motion or in a direct appeal." 3-24 Moore's Manual Practice and Procedure § 24.80[3][c] (MB 2013) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243–44 (10th Cir. 1991), *cert. denied*, 506 U.S. 828 (1992)). The language of Rule 60(b) permits the court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for any of the grounds enumerated therein, including, but not limited to, mistake, inadvertence, or excusable neglect or newly discovered evidence. Fed. R. Civ. P. 60(b). Under the category of "mistake," and particularly important in cases where the motion timeframe under Rule 59(e) has expired, the Second Circuit has held that Rule 60(b)(1) is available for the trial court to correct its own legal errors. *United Airlines, Inv. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2008) (citing *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003); *Parks v.*

---

[4] Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Bankruptcy Rule 9023 reduces this timeframe to fourteen days. Fed. R. Bankr. P. 9023. Rule 60(c)(1), in contrast, permits the filing of a motion to correct a mistake or to introduce new evidence "within a reasonable time . . . [but] no more than a year after entry of the judgment or order . . . ." Fed. R. Civ. P. 60(c)(1). The Motion in this case was filed ten days after the Court's issuance of the Decision.

*U.S. Life & Credit Corp.*, 677 F.2d 838, 839 (11th Cir. 1982) (per curium) ("The 'mistakes' of judges may be remedied under this provision.")).

Although Acee could have moved under Rule 60(b) to seek relief from the judgment on the grounds of the Court's mistake, his own mistake, inadvertence or excusable neglect, or newly discovered evidence and in the alternative under Rule 59(e) to alter or amend the judgment, *id.* § 24.80[c] (citing *Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 77–78 (2d Cir. 2000)), he has elected to proceed only under Rule 60 without reference to a particular subsection of the Rule under which he seeks relief. The effect of Acee's choice to proceed under Rule 60(b) rather than Rule 59(e), however, is that the Motion must be adjudicated under the more restrictive standard of Rule 60(b). "Since [Rule] 60(b) is an extraordinary judicial remedy," it is available only in "exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citing cases). "Rule 59(e), in contrast, requires that the movant 'clearly establish' a ground for relief . . . ." 12-60 Moore's Federal Practice–Civil § 60.03[4] (MB 2013). As one of the leading federal practice treatises cautions, if the movant wants the benefit of the lower threshold of proof offered by Rule 59(e), the movant should expressly invoke Rule 59(e) in his or her motion. *Id.*

Given Acee's substantive requests for relief, only Rule 60(b)(1) and (b)(2) are implicated by the Motion. As more fully set forth below, Acee primarily contends that the Court committed legal error. His legal error arguments clearly fall within the ambit of Rule 60(b)(1). Alternatively, Acee asks to reopen or augment the Court's factual findings. Given the lack of clarity in the Motion, the Court could construe the basis for this relief as either a litigation mistake leading to insufficient proof from which Acee now seeks relief under Rule 60(b)(1), or as newly discovered evidence that Acee seeks to introduce under Rule 60(b)(2). Because Acee

does not assert the existence of any of the elements of the ground of newly discovered evidence, i.e., that the evidence was in existence but undiscoverable despite reasonable diligence by the moving party at the time of trial, the Court will only consider the Motion under Rule 60(b)(1).

**B.  Chapter 12 Eligibility**

"Only a family farmer . . . with regular annual income may be a debtor under chapter 12" of the Bankruptcy Code.  11 U.S.C. § 109(f).  In pertinent part, the Bankruptcy Code defines a "family farmer" as:

> (A) [an] individual . . . engaged in a farming operation whose aggregate debts do not exceed $3,792,650 and *not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual . . . unless such debt arises out of a farming operation),* on the date the case is filed, arise out of a farming operation owned or operated by such individual . . . , and such individual . . . receive[s] from such farming operation more than 50 percent of such individual's . . . gross income for–
> (i)  the taxable preceding year; or
> (ii) each of the 2d and 3d taxable years preceding the taxable year in which the case concerning such individual . . . was filed[.]

11 U.S.C. § 101(18)(A) (emphasis added).[5]  The elements of this four-part test are commonly labeled as follows: (1) the "farming operation" element; (2) the indebtedness limitation element; (3) the farm debt test; and (4) the farm income test.  6-100 Collier Bankruptcy Practice Guide ¶ 100.03[1][a]–[d] (MB 2013).

**C.  The Court's Findings of Fact and Conclusions of Law**

Much of the Decision focused on whether Acee received more than half his gross income from a farming operation so as to satisfy the fourth element.  With respect to the farm debt test now at issue, the Court's discussion was limited by the record and the void in case law that specifically addresses this portion of the statute.  The Court noted that § 101(18)(A) directs the

---

[5] When Chapter 12 was originally enacted in 1986, the eligibility requirements were codified in § 101(17)(A).  The language of § 101(18)(A) mirrors that of former § 101(17)(A), with the exception that the "80 percent" language in § 101(17)(A) has been replaced by the "50 percent" language in the current statute.  Thus, cases decided under former § 101(17)(A) are relevant to the question now before the Court.

Court to first exclude from the debt calculation any debt for a principal residence unless that debt "[arose] out of a farming operation." Consistent with the small body of reported case law, the Court then turned directly to the meaning of the quoted phrase. Citing *In re Teolis*, 419 B.R. 151, 161 (Bankr. D.R.I. 2009), the Court stated that the criteria for determining whether a debt "[arose] out of a farming operation" are the reason or purpose for which the mortgage debt was incurred and the use to which the borrowed funds were put. (Decision at 15.) In other words, were the mortgage proceeds actually procured for and used in the farming operation?[6]

There are no reported decisions that address in detail the debt calculation itself or the placement of the parenthetical language within § 101(18)(A) and, thus, precisely what it means to exclude the debt for the principle residence from the debt calculation. As set forth in the Decision, the Court's reading of the statute renders the following formula: farm-related debt (excluding the debt for the principal residence unless the requisite showing is made that the debt "arises out of a farming operation") divided by the aggregate noncontingent, liquidated debts scheduled on the date the case is filed (including the residential debt). In order for the debtor to

---

[6] Although the Court cited *In re Teolis*, 419 B.R. 151, it did not adopt the specific test set forth therein, which has been described by some courts as the "but for" test. *First Nat'l Bank v. Woods (In re Woods)*, 465 B.R. 196, 203 (B.A.P. 10th Cir. 2012) (discussing the competing tests and rejecting the "but for" test in favor of a broader test requiring only that the "purpose of the debt . . . have some connection to the debtor's farming activity."). Under the test set forth in *In re Teolis*, the debt must have a "direct link" to or be "inescapably interwoven" with the farming operation such that but for the debt, there would be no farm or farming operation. The Bankruptcy Appellate Panel for the Tenth Circuit in *In re Woods* adopted a broader test that the debt have "some connection" to the debtor's farming activity. *In re Woods*, 465 B.R. at 203. The question in that case was whether the bankruptcy court properly included the construction portion of the debtors' residential mortgage loan in the farm debt calculation. The Bankruptcy Appellate Panel for the Tenth Circuit concluded that the bankruptcy court did rule correctly because the debtors' farmhouse was "an integral part of the farm operation." *Id.* Here, Acee argues that he has met the test set forth in *In re Woods*. On reconsideration, the Court need not chose which of the two tests it will adopt as precedent to govern future chapter 12 cases filed in the Utica Division, but rather will confine its discussion to whether Acee has met the broader test, as he has argued.

be eligible for chapter 12 relief, the answer to this formula must equal or exceed 50%.[7]  11 U.S.C. § 101(18)(A).  The Court applied this formula to the debts listed in Acee's petition and schedules and concluded that only $236,438.82 of Acee's aggregate debt in the amount of $545,797.89, or approximately 43%, constituted farm-related debt.  Inclusion of the residential debt as farm-related debt in the numerator of this formula would increase the percentage to approximately 96%.  (Decision at 15.)  Exclusion of the residential debt altogether from this formula, which Acee now advocates, would result in a percentage of approximately 94%.

**D. The Parties' Arguments**

Acee asserts two arguments under the theory of legal error.  First, Acee challenges the Court's interpretation and application of the parenthetical language in § 101(18)(A) excluding debt for a principal residence from the farm debt test.  He argues that the correct interpretation of § 101(18)(A) requires the Court either to include or to exclude the residential debt from the formula altogether, meaning that it should be included or excluded from both the numerator and the denominator depending on whether the mortgage debt arises out of the farming operation.  Under this reading, because the Court found that Acee's residential debt was not sufficiently farm-related, Acee avers that his total farm-related debt is $236,438.82, as compared to total non-residential debt of $258,473.35, or, by his calculations, 91.5%.[8]  Under Acee's preferred reading of the statute, he contends that the Court's erroneous application of § 101(18)(A) resulted in a corresponding factual error regarding Acee's total percentage of farm-related debt.

---

[7] For example, if a debtor scheduled aggregate noncontingent, liquidated debts in the amount of $100,000.00, comprised of a residential loan in the amount of $55,000.00, farm-related debt for the purchase of farm supplies and equipment in the amount of $35,000.00, and consumer debt in the amount of $10,000.00, he would qualify for chapter 12 relief if he could prove that the $55,000.00 residential debt arose out of the farming operation.  In that scenario, 90% of his aggregate noncontingent, liquidated debts would constitute farm-related debt.  If he could not prove that the $55,000.00 residential debt arose out of the farming operation, however, he would not qualify because only 35% of his aggregate, noncontingent, liquidated debts would constitute farm-related debt.

[8] The Court excluded certain debts from Acee's aggregate debt calculation based on his testimony that these debts were associated with real property in which he held no ownership interest.  It appears from Acee's calculations that he is using the raw numbers listed in his schedules without making the same deductions.

Second, Acee argues that even if the Court determines that its interpretation of § 101(18)(A) is correct, its finding that the residential debt did not arise out of his farming operation should be corrected based on the proof already adduced at trial or based upon additional proof to be submitted by Acee as requested in the Motion. Once done, the Court must then conclude that Acee satisfies the farm debt test. In support of this alternative argument, Acee analogizes his circumstances to those of the debtors in *First National Bank v. Woods (In re Woods)*, 465 B.R. 196 (B.A.P. 10th Cir. 2012), whom the bankruptcy court determined met the threshold showing under the farm debt test for the reason that their "farmhouse was an integral part of the farm operation because the farm's books and records are maintained in an office there and the farmhouse's proximity to the rest of the [hay and horse boarding] operation allowed the Woods to take care of their livestock and irrigation system," *id.* at 203–04. Specifically, Acee directs the Court's attention to his testimony that he also uses his personal residence to keep and maintain the books and records for the farming operation and the home is surrounded by farmland.

OSB and AFCU contend that the Decision is legally sound and that Acee's reading of § 101(18)(A) is inconsistent with the statutory language. Both creditors read the statutory language in the same manner as the Court, so as to exclude from the farm debt calculation debt associated with the principal residence unless that debt arises out of the farming operation, but to include such debt as part of the debtor's aggregate noncontingent, liquidated debt against which farm-related debt is measured. AFCU asserts that the parenthetical language of § 101(18)(A) creates a presumption that the debt securing the debtor's principal residence is not farm-related debt, which may be rebutted by the debtor upon a showing that the debt did indeed arise out of a farming operation. AFCU states that under this reading of the statute, which the Court applied in

the Decision, in order for a principal residence to be considered integral to the farming operation such that the associated debt may be included in the numerator of the farm debt calculation, the debtor must show that the farming operation would be difficult, if not impossible, to maintain without the presence and usage of the principal residence.  Elevating this argument one step further, OSB suggests that to accept an interpretation of § 101(18)(A) whereby a debtor could invoke the protection of chapter 12 simply by owning or constructing a personal residence secured by a sizeable mortgage debt on or near the farm property, without more, would manipulate the carefully crafted eligibility standards in a manner contrary to legislative intent.

OSB and AFCU aver that Acee's testimony in this case falls far short of proving the necessity of his personal residence to the farming operation.  Both creditors suggest that Acee's case is dissimilar from *In re Woods* in several respects, including most notably that Acee's residence is a "stand alone" residence mortgaged in conjunction with five acres of contiguous land that has never been utilized for the farming operation and that is not an integral part of the farming operation.  OSB and AFCU point out that the debtor in *In re Woods* used a significant amount of the mortgage loan secured by his personal residence to satisfy a sizeable amount of pre-existing farm debt and the record in that case included testimony by the debtor directly related to the farm debt test to enable the bankruptcy court to support its findings.  They assert that the record in this case, by comparison, falls short of proof sufficient to overcome the presumption to elevate the personal residence to the status of farm property or property integral to the farming operation.  Procedurally, both creditors argue that Acee should not now be given a second bite at the apple through the vehicle of reconsideration.

**E. Legal Analysis**

The Court begins its analysis by addressing Acee's first argument under the theory of legal error.  As the parties acknowledge in their submissions, the majority of courts that have addressed a controversy regarding the farm debt test focused on the nature of the questioned activity and its relation to farming, without any meaningful discussion of the statutory formula. *See, e.g., In re Woods*, 465 B.R. at 202–03 (addressing whether construction financing for a debtor's residence on a farm was "a debt that [arose] out of a farming operation" and must therefore be counted as farm debt to determine whether the debtors met the 50% threshold); *In re Saunders*, 377 B.R. 772 (Bankr. M.D. Ga. 2007) (addressing whether loans secured by farmland used to operate a car dealership constituted "debt that [arose] out of a farming operation" and must therefore be counted as farm debt to determine whether the debtor met the 50% threshold). The *Saunders* court stated that "[b]ecause the business debt secured by the farm [could not] be treated as farm-related debt, Debtor's farm-related debt consist[ed] of less than *half of his total debt*." 377 B.R. at 776 (emphasis added).  This Court therefore infers from *In re Saunders* that it's reading of § 101(18)(A) is correct.  The Court is aware of only two cases where the bankruptcy court, without discussion or analysis, applied the farm debt test to exclude the residential debt from the aggregate noncontingent, liquidated debt amount, as Acee requests. *In re Hemann*, 2013 Bankr. LEXIS 1385 (Bankr. N.D. Iowa Apr. 3, 2013) (deciding the separate question of whether debt from two different legal entities should be included in the farm debt test calculations); *In re Teolis*, 419 B.R. at 161 (excluding the debtors' mortgage debt from their total scheduled debt).[9]  These decisions, however, are not binding on this Court and do not provide any persuasive reasoning or instruction for this Court to follow.

---

[9] The *Hemann* court wrote without explanation: "Debtor asserts that the total debt on the date of filing (excluding debt on the principal residence as § 101(18)(A) provides), is $237,001.29.  Under § 101(18)(A), 50% of that

In the words of the Fifth Circuit Court of Appeals, the language of § 101(18)(A) is "not a model of clarity." *In re Reiners*, 846 F.2d 1012, 1013 (5th Cir. 1988) (interpreting nearly identical language in former § 101(17)(A)).  In light of the legislative history and purpose of chapter 12, however, this Court believes that its interpretation of § 101(18)(A) is entirely sensible.

Congress initially enacted chapter 12 on a temporary basis as part of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, and a series of extensions followed to keep Chapter 12 alive.  Katherine M. Porter, *Phantom Farmers: Chapter 12 of the Bankruptcy Code*, 79 Am. Bankr. L.J. 729, 731-32 nn.14 & 15 (2005).  Chapter 12 is rehabilitative in nature and was initially designed as a more workable vehicle to overcome perceived problems with farmers' potential reorganization under either chapter 11 or chapter 13.  *Id*. at 732 n.19 (citation omitted); *see also* Ralph A. Peeples, *Staying In: Chapter 11, Close Corporations and the Absolute Priority Rule*, 63 Am. Bankr. L.J. 65, 103 (1989) (citing congressional history). The aim of Congress was to give family farmers a "fighting chance" to keep their land and to return to full-time farming after reorganizing. Porter, 79 Am. Bankr. L.J. at 734; *Harmon v. United States ex rel. FMHA*, 101 F.3d 574, 584 (8th Cir. 1996) (quoting H.R. Conf. Rep. No. 99-958, at 48 (1986), *reprinted* in 1986 U.S.C.C.A.N. at 5251-52). With the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which became effective on October 17, 2005, chapter 12 became a permanent part of the Bankruptcy Code.

---

amount, or $118,500.65, must 'arise out of **a** farming operation.'" *In re Hemann*, 2013 Bankr. LEXIS 1385, at *17 (emphasis in original).  The *Teolis* court similarly wrote without explanation that "[t]he Debtors' combined schedule debt (excluding the mortgage on their residence), is approximately $1,100,000.00. Their obligation [on their business property]–$770,000–is more than 50% of their total debt.  Therefore, the Debtors clearly meet [the farm debt] test for eligibility." *In re Teolis*, 419 B.R. at 161.

Chapter 12 is reserved for "family farmers," whose primary occupation or livelihood is derived from a farming operation. Preliminarily, the Court agrees with AFCU that the parenthetical language of § 101(18)(A) creates a presumption that residential debt is not farm-related debt for purposes of determining an individual's eligibility for chapter 12 protection. The Court's reading of § 101(18)(A) to include the residential debt in the denominator but not in the numerator of the formula unless the debtor can overcome this presumption best preserves the gatekeeping function intended by the eligibility requirements set forth in § 101(18)(A). This interpretation of the formula prevents those debtors who are only tangentially involved in or dependent upon farming from systemically excluding their residential debt figure from their aggregate noncontingent, liquidated debt figure to meet the 50% eligibility threshold set forth in § 101(18)(A). *In re Woods*, 465 B.R. at 203 ("We suggest that the residential exclusion, like the income requirement, was aimed at preventing debtors from avoiding the more onerous limitations on restructuring residential debt found in other chapters by relying on a 'hobby farm,' rather than at actual farmers who live on their farms."). The Court therefore rejects Acee's argument that it erred in applying the law in this case.

The Court having now decided that it correctly applied § 101(18)(A), it will next address Acee's second argument under the theory of legal error that the Court erred in concluding that his residential debt did not arise out of his farming operation. Acee offered no testimony as to the purpose or use of the home equity or mortgage loans and proceeds. His testimony on this subject was limited to the fact that "he uses his personal residence as a home office from which he conducts certain business functions, including, but not limited to, the payment of bills." (Decision at 15.) On reconsideration, Acee emphasizes the fact that his personal residence is surrounded by the rest of the farming operation.

A comparison of these facts to the facts set forth in other reported decisions leads the Court to conclude that these facts alone are insufficient to establish the requisite connection between Acee's residential debt and the farming operation. *See, e.g., In re Kan Corp.*, 101 B.R. 726, 727 (Bankr. W.D. Okla. 1988) (Determining that loan proceeds used to purchase a beer distributorship, although the loan was partially secured by the debtor's farmland, did not qualify under § 101(18)(A) because the proceeds of the loan were not "in some way . . . directly applied to or utilized in the farming operations."); *In re Martlatt*, 116 B.R. 703, 706 (Bankr. D. Neb. 1990) (Determining that a marital settlement was intended to allow the debtor to retain the farming operation and, as such, the debt was "inescapably interwoven" with the farming operation.); *In re Douglass*, 717 B.R. 714, 715 (Bankr. W.D. Mo. 1987) (Determining that the proceeds from a loan collateralized by a service station owned by the debtors qualified under § 101(18)(A) because the proceeds were used to keep their farm running."). As the *Douglass* court observed, "[d]ebts secured by non-farm property may still 'arise out of a farming operation' if they were actually procured for and used in the farming operation, but the burden of showing that purpose and that use rests upon the debtor." *In re Douglass*, 717 B.R. at 715. Here, the facts emphasized by Acee are insufficient to show the requisite connection between his residential debt and his farming operation. The Court therefore rejects Acee's argument that the Court erred in concluding that the residential debt did not arise out of his farming operation.

Having now rejected both arguments under Acee's first ground for reconsideration, the Court turns to Acee's second ground for reconsideration of attorney error. Although not implicitly stated in the Motion, the Court has construed Acee's request to reopen the record to further establish factors proving a connection between the debt on his personal residence and his

farming operation as a tacit admission by counsel of attorney error or oversight.[10]  The Second Circuit has provided strict guidance as to when counsel's error or omission may justify relief under Rule 60(b)(1).  In this regard, the Second Circuit has indicated that it has "consistently declined to relieve a client under subsection (1) of the 'burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to effectively manage his caseload.'" *Nemaizer v. Baker*, 793 F.2d at 62 (collecting cases).  Further, "mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." *Id.* (citing cases).  Here, as Acee's pre- and post-trial submissions confirm, Acee focused exclusively on the farm income test in response to OSB's objection to confirmation, notwithstanding that AFCU in its objection to confirmation directly raised and challenged Acee's ability to meet the farm debt test.

Acee bore the ultimate burden of proving eligibility for relief as a family farmer.  *In re Tim Wargo & Sons, Inc.*, 869 F.2d 1128, 1130 (8th Cir. 1989).  Given the record before the Court, the Court concluded that Acee failed to carry that burden.  It is irrelevant whether Acee and his counsel made an affirmative tactical decision to narrowly focus only on the issue raised by OSB or instead inadvertently dismissed the equally important issue raised by AFCU.  Either way, Acee failed to address the issue raised by AFCU, which became decisive of the Court's outcome.  Relief from this type of omission or error in litigation strategy is simply not contemplated by Rule 60(b)(1).  *See, e.g., Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) ("The kind of litigation mistakes remediable under a Rule 60(b)(1) motion are litigation

---

[10] The Court recognizes, of course, that this classification of counsel's handling of the case and trial may be oversimplified or too broad.  It would not be attorney error or oversight if the facts as known by Acee and his counsel could not under any circumstances satisfy Acee's burden of proof on this issue.  With this caveat in mind, however, the Court will continue its discussion of what the Court perceives to be Acee's second ground for reconsideration under Rule 60(b)(1) in order to give Acee the fullest benefit of the Rule invoked.

mistakes that a party could not have protected against, . . . . Thus, a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot alter, once the lesson is learned, turn back the clock to undo those mistakes.") (internal citations omitted); *Hillman v. United States Postal Serv.*, 2002 U.S. Dist. LEXIS 25072, at *13–14 (D. Kan. Oct. 22, 2002) (A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion for reconsideration) (citation omitted); *Batac Development Corp. v. B & R Consultants Inc.*, 2002 U.S. Dist. LEXIS 3695, at *12 (S.D.N.Y. Mar. 23, 2000) (failure of counsel to put forth the best possible case on behalf of his client does not justify setting aside the judgment under Rule 60(b)(1)). Accordingly, Acee's second ground for reconsideration under Rule 60(b)(1) is also meritless.

## CONCLUSION

For the foregoing reasons, Acee has not met the high burden of establishing grounds for reconsideration under Rule 60(b)(1) and his Motion is therefore denied. As requested in the Motion, however, the Court will grant Acee a brief extension of fourteen days from entry of this Memorandum-Decision and Order to either convert or dismiss Acee's chapter 12 case.

It is SO ORDERED.

Dated: January 10, 2014
      Utica, New York

/s/DIANE DAVIS
DIANE DAVIS
United States Bankruptcy Judge